[No. 38916-5-I. Division One. January 20, 1998.]

KING COUNTY DEPARTMENT OF PUBLIC SAFETY, *Respondent*,
v. REAL PROPERTY KNOWN AS 13627 OCCIDENTAL AVE. S., ET
AL., *Appellants*.

John D. Blankinship of *Montgomery, Purdue, Blankinship & Austin, P.L.L.C.*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Tami A. Perdue, Deputy*, for respondent.

AGID, J. — When Vernon D. Clausing continued to sell legend drugs after his professional license was revoked, the State brought this forfeiture action against real and personal property belonging to Clausing and his wife, Cleo. Because the facts of this case fall outside the scope of the forfeiture statute, we hold that the property was not subject to forfeiture under the statute and reverse.

## FACTS

On April 22, 1995, the Board of Osteopathic Medicine and Surgery revoked Vernon Clausing's professional license and fined him $25,000 based on its finding that he had overprescribed the legend drugs nalbuphine (Nubain) and carisoprodol (Soma). In July 1995, Sheryl Reynaga contacted police and told them Clausing was continuing to sell Nubain and Soma even though his license had been revoked. Reynaga agreed to cooperate in a police investigation. In July and August 1995, she participated in a series of controlled buys during which Clausing and his wife, Cleo, gave her Nubain and Soma both at the Community Family Practice Clinic and at their home, which is immediately adjacent to the clinic. Based on these transactions, police obtained and executed a search warrant on both the clinic and the Claus-

ings' home. They found large amounts of Nubain and Soma in both places and, in the clinic, a log reflecting a large volume of sales of both drugs. Clausing and his wife do not dispute that they dispensed Nubain and Soma from their clinic and home after his license was revoked.

On August 18, 1995, the King County Department of Public Safety filed four in rem forfeiture actions against the Clausings' real and personal property, including personal property consisting of the Community Family Practice Clinic, the real property on which the clinic is located, the real property on which the Clausings' home is located, and two bank accounts at Key Bank. After trial, the court dismissed the State's forfeiture action against the two bank accounts but directed forfeiture of the remaining properties.

## DISCUSSION

The State contends that the Clausings' real and personal property was subject to forfeiture under RCW 69.50.505 because it was used to facilitate transactions in violation of RCW 69.41, or was acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of RCW 69.41.[1] But while some sections of RCW 69.50.505 make reference to violations of RCW 69.41, not every section of the statute applies to such violations. The pertinent provisions of RCW 69.50.505 follow:

> (a) The following are subject to seizure and forfeiture and no property right exists in them:
>
> . . . .
>
> (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in . . . delivering . . . *any*

---

[1] RCW 69.41.030 and RCW 69.41.070 prohibit the possession, sale, delivery, or possession with intent to deliver legend drugs without a valid prescription dispensed by a licensed practitioner. Because Vernon Clausing's license to practice osteopathic medicine was revoked on April 27, 1995, and Cleo Clausing was never a practitioner as defined in RCW 69.41.010(11), neither could legally sell, possess, dispense or deliver Nubain or Soma after that date.

*controlled substance* in violation of this chapter or chapter 69.41 . . . RCW;

. . .

(5) All books, records, and research products and materials, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this chapter or chapter 69.41 . . . RCW;

. . . .

(7) All moneys, negotiable instruments, securities, or other tangible or intangible property of value furnished or intended to be furnished by any person in exchange *for a controlled substance* in violation of this chapter or chapter 69.41 . . . RCW, all tangible or intangible personal property, proceeds, or assets acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 . . . RCW, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter or chapter 69.41 . . . RCW . . . .

(8) All real property, including any right, title, and interest in the whole of any lot or tract of land, and any appurtenances or improvements which are being used with the knowledge of the owner for the manufacturing, compounding, processing, delivery, importing, or exporting *of any controlled substance, or* which *have been acquired in whole or in part with proceeds* traceable to an exchange or series of exchanges in violation of this chapter or chapter 69.41 . . . RCW, if such activity is not less than a class C felony and a substantial nexus exists between the commercial production or sale of the controlled substance and the real property. However:

. . .

(ii) The bona fide gift of a controlled substance, legend drug, or imitation controlled substance shall not result in the forfeiture of real property;

. . .

(iv) The unlawful sale of marijuana or a legend drug shall not result in the forfeiture of real property unless the sale was forty grams or more in the case of marijuana or one hundred

dollars or more in the case of a legend drug, and a substantial nexus exists between the unlawful sale and the real property[.]

(Emphasis added.) RCW 69.50.505(e) provides that in cases involving real property, the burden of proof that the seized real property is subject to forfeiture is on the law enforcement agency.

The Clausings' real property can be forfeited only if it falls under RCW 69.50.505(a)(8).[2] That subsection has two clauses which are stated in the alternative. The first provides for the forfeiture of real property used for the "delivery . . . of any controlled substance." Because Nubain and Soma are not controlled substances,[3] this clause does not apply. The second clause provides for forfeiture of real property that has been "acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of . . . chapter 69.41." But here the trial court made no finding that any of the real property was "acquired in whole or in part" with proceeds traceable to the Clausings' sale of legend drugs. Nor does the record support such a finding. Rather, it reflects that the real property on which the clinic is located was acquired in 1950, 45 years before the Clausings began to sell and distribute legend drugs in violation of RCW 69.41. There is nothing in the record about when they bought the house. Because there is no evidence that the real property was acquired in whole or in part with proceeds traceable to illegal drug exchanges, or that it was used in connection with "the manufacturing, compounding, processing, delivery, import-

---

[2]It is undisputed that the value of the legend drugs dispensed by the Clausings was in excess of one hundred dollars. Thus, the exception in RCW 69.50.505(a)(8)(iv) does not apply. The exception in RCW 69.50.505(a)(8)(ii) would apply if the transactions were a bona fide gift. But the trial court made no such finding, and it appears from the record that the drugs were given to Reynaga in exchange for information about a grand jury Clausing believed Reynaga was on.

[3]A " '[c]ontrolled substance' means a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state laws, or federal or board rules." RCW 69.50.101(d). Soma and Nubain, or carisoprodol and nalbuphine, are not listed on Schedules I through V.

ing, or exporting of any controlled substance," none of it is subject to forfeiture under RCW 69.50.505(a)(8).

 Nor is the Clausings' personal property subject to forfeiture under the facts of this case. RCW 69.50.505(a)(2) and the first clause of RCW 69.50.505(a)(7),[4] like the first clause of RCW 69.50.505(a)(8), are limited to violations involving the distribution or exchange of a controlled substance. To the extent that RCW 69.50.505(a)(2) can be considered ambiguous because it refers to the "manufacturing [of a] controlled substance in violation of . . . chapter 69.41 . . . RCW," we may look to the legislative history of the statute.[5] In enacting RCW 69.50.505, the Legislature referred only in general terms to drug-related offenses.[6] But in the statute itself the Legislature did differentiate between legend drugs and controlled substances and imposed a different range of consequences for illegal transactions involving controlled substances from those

---

[4]We note that the trial court's order directing the forfeiture of the Clausings' personal property is premised only on RCW 69.50.505(a)(2) and (5). RCW 69.50.505(a)(5) relates to "[a]ll books, records, and research products and materials," none of which were identified as the subject of this action.

[5]*State v. Roberts*, 117 Wn.2d 576, 585, 817 P.2d 855 (1991). But if any drug listed on Schedules I through V can be prescribed by a physician, that alone would resolve the ambiguity.

[6]The Legislature stated as follows:

The legislature finds that: Drug offenses and crimes resulting from illegal drug use are destructive to society; the nature of drug trafficking results in many property crimes and crimes of violence; state and local governmental agencies incur immense expenses in the investigation, prosecution, adjudication, incarceration, and treatment of drug-related offenders and the compensation of their victims; drug-related offenses are difficult to eradicate because of the profits derived from the criminal activities, which can be invested in legitimate assets and later used for further criminal activities; and the forfeiture of real assets where a substantial nexus exists between the commercial production or sale of the substances and the real property will provide a significant deterrent to crime by removing the profit incentive in drug trafficking, and will provide a revenue source that will partially defray the large costs incurred by government as a result of these crimes. The legislature recognizes that seizure of real property is a very powerful tool and should not be applied in cases in which a manifest injustice would occur as a result of forfeiture of an innocent spouse's community property interest.

LAWS OF 1989, ch. 271, § 211.

involving legend drugs.[7] In addition, both "controlled substance" and "legend drug" are defined in the relevant statutes.[8] Where the Legislature clearly differentiates between the two in other subsections, we cannot assume it intended "controlled substance" to mean both controlled substances and legend drugs where it has not explicitly said so.[9] Because RCW 69.50.505(a)(2) and the first clause of RCW 69.50.505(a)(7) are limited to violations involving the exchange of a controlled substance and the drugs the Clausings illegally exchanged were not controlled substances, neither authorizes forfeiture of the Clausings' personal property, *i.e.*, the Community Family Practice Clinic.

The second and third clauses of RCW 69.50.505(a)(7) also do not provide a basis for forfeiting the Clausing's personal property. The second clause requires some evidence that the property was "acquired in whole or in part with proceeds traceable to an exchange or series of exchanges in violation of . . . chapter 69.41 . . . RCW." The record does not reflect that any effort was made to trace the proceeds of the Clausings' illegal sale of legend drugs, and the trial court entered no finding on the question. The third clause of RCW 69.50.505(a)(7) refers only to "moneys, negotiable instruments, and securities," none which was at issue here.

On these facts, RCW 69.50.505 provides no basis for forfeiting the Clausings' real and personal property. We therefore reverse and direct that the property be returned

---

[7]*See, e.g.*, RCW 69.50.505(a)(8)(ii), (iv).

[8]*See* RCW 69.50.101(d); RCW 69.41.010(9).

[9]*See State v. Wilbur*, 110 Wn.2d 16, 19, 749 P.2d 1295 (1988) (the rule of lenity requires that ambiguous criminal statutes be strictly and liberally construed in favor of the defendant); *De Grief v. City of Seattle*, 50 Wn.2d 1, 11, 297 P.2d 940 (1956) (when legislature uses similar words in different parts of statute, courts presume it intended same meaning throughout).

to Vernon and Cleo Clausing, together with an award of costs and reasonable attorney fees below and on appeal.[10]

Reversed.

KENNEDY, A.C.J., and GROSSE, J., concur.

Review denied at 136 Wn.2d 1008 (1998).

[10]RCW 69.50.505(e) provides that the prevailing party is entitled to a judgment for costs and reasonable attorney fees and that the "seizing law enforcement agency shall promptly return the article or articles to the claimant upon a determination by the administrative law judge or court that the claimant is the present lawful owner or is lawfully entitled to possession thereof of items specified in subsection [(a)(2)-(8)] of this section."